IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>CONRAD M. BLACK, F. DAVID RADLER, and HOLLINGER, INC.<br><br>Defendants. | No. 04 C 7377 |

## MEMORANDUM OPINION AND ORDER

This is a civil enforcement action brought by the Securities and Exchange Commission ("SEC") alleging violations of the Securities Exchange Act of 1934 (the "Exchange Act") and Rules issued thereunder. From 1999 through 2003, defendants Conrad Black and David Radler allegedly engaged in a fraudulent and deceptive scheme to divert cash and assets from Hollinger International, Inc. to themselves and others, both directly and through defendant Hollinger, Inc. The First Amended Complaint summarizes the scheme as follows:

> 2. Black, Hollinger International's former Chairman and Chief Executive Officer ("CEO"), and Radler, its former Deputy Chairman, President and Chief Operating Officer ("COO"), conducted their scheme through a series of related party

transactions involving, among other things, purported "non-competition payments" by which Black and Radler diverted to themselves, to Defendant Hollinger, Inc., a Canadian public holding company controlled by Black, and to other corporate insiders approximately $85 million of the proceeds from Hollinger International's sale of newspaper publications to third parties.

3. Black and Radler also orchestrated the sale of Hollinger International's newspaper publications at below market prices to another privately held company owned and controlled by Black and Radler, including a $1.00 transaction.

4. In addition, in February 2003, Black authorized the investment of $2.5 million of Hollinger International's funds in a venture capital fund with which Black and two other directors of Hollinger International were affiliated.

5. Moreover, in November 2003, Black approved a press release issued by Hollinger International in which he misled the investing public about his intention to devote his time to an effort to sell Hollinger International assets for the benefit of all of Hollinger International['s] shareholders (the "Strategic Process") and not to undermine that process by engaging in transactions for the benefit of himself and Hollinger, Inc.

6. To perpetrate their scheme, Black and Radler misrepresented and omitted to state material facts regarding the related party transactions to Hollinger International's Audit Committee and Board of Directors. Black and Radler also misrepresented and omitted to state material facts regarding these related party transactions in Hollinger International's filings with the Commission and during Hollinger International shareholder meetings.

Following this summary, the Amended Complaint provides factual details as to these allegations. Defendants and other persons and entities mentioned in the complaint are identified

and relationships between those involved are described. Am. Compl. ¶¶ 15-45. The allegedly fraudulent non-competition transactions are described generally, id. ¶¶ 46-60, and then each one is alleged in detail and labeled as follows: (a) American Trucker Transaction (¶¶ 61-72); (b) CNHI I (Community Newspaper Holdings, Inc.) Transaction (¶¶ 73-84); (c) Horizon Transaction (¶¶ 85-94); (d) CNHI II Transaction (¶¶ 95-107); (e) Forum Transaction (¶¶ 108-15); (f) Paxton Transaction (¶¶ 116-23), and (g) CanWest Transaction (¶¶ 161-71). The SEC also describes additional non-competition payments that were paid from reserves of the Forum and Paxton Transactions. Id. ¶¶ 127-32. Further, the SEC describes non-competition payments that were made from a subsidiary of Hollinger International (American Publishing Company), but which were not related to a sale of Hollinger International assets. Id. ¶¶ 133-37. Hollinger International's Board's process for ratifying the CNHI II, Forum, and Paxton Transactions is described, including alleged omissions by Black and Radler. Id. ¶¶ 124-26. The Amended Complaint details alleged misstatements and omissions regarding the CNHI II, Forum, and Paxton transactions and payments and the American Publishing payments that were contained in SEC filings, id. ¶¶ 138-51, 155-60, and made at a May 2002 shareholder meeting of Hollinger International, id. ¶¶ 152-54. The Amended Complaint also details misrepresentations and omissions regarding the CanWest

transaction that were made to the Hollinger International Board and Audit Committee, in SEC filings, and at a shareholder meeting. Id. ¶¶ 172-202.

The Amended Complaint details how Black and Radler transferred Hollinger International assets to a company, Horizon Publications, Inc., that they control and which is 75% owned by them. One of the transfers was through an intermediary and each transfer involved misrepresentations or omissions regarding better offers for the assets. The allegations detail both the transactions themselves and the misrepresentations or omissions made to the Hollinger International Board and Audit Committee and in SEC filings. Id. ¶¶ 203-56.

The Amended Complaint provides details regarding Hollinger International investing in a venture capital fund in which Black and two other directors[1] were involved, but without obtaining approval from the Audit Committee or independent directors. Id. ¶¶ 257-66. Alleged omissions in two SEC filings are also alleged. Id. ¶¶ 267-73.

The Amended Complaint also contains details regarding a Special Committee of independent Hollinger International directors that was formed to investigate and deal with the conduct that is the basis of the SEC's Amended Complaint. Black

---

[1]Radler is not alleged to have been involved in this transaction.

- 4 -

entered into an agreement to repay certain misappropriated funds and aid Hollinger International in a Strategic Process to evaluate Hollinger International's financial alternatives. He also agreed to refrain from supporting Hollinger, Inc. transactions that would negatively affect Hollinger International's Strategic Process. Black approved a November 17, 2003 press release announcing this agreement. In the meantime, however, Black engaged in discussions to sell Hollinger, Inc. that would undermine this process. The press release is alleged to contain misrepresentations. Id. ¶¶ 274-297.

The Amended Complaint contains nine counts labeled as follows: (I) Violations of § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, by all defendants; (II) Violations of § 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rules 14a-3 and 14a-9, 17 C.F.R. §§ 240.14a-3, 240.14a-9, by Black and Radler; (III) Violations of § 13(a) of the Exchange Act, 15 U.S.C. § 78t(a), and Rules 12b-20, 13a-1, and 13a-13, 17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-13 by all defendants as control persons under § 20(a) of the Exchange Act, 15 U.S.C. § 20(a); (IV) Violations of §§ 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act, 15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(2)(B), by all defendants as control persons under § 20(a) of the Exchange Act, 15 U.S.C. § 20(a); (V) Violations of Exchange Act Rule 13b2-1, 17 C.F.R.

§ 240.13b2-1, by all defendants; (VI) Violations of § 13(b)(5) of the Exchange Act, 17 C.F.R. § 78m(b)(5), by all defendants; (VII) Violations of § 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Exchange Act Rules 13a-1 and 13a-16, 17 C.F.R. §§ 240.13a-1, 240.13a-16, by Hollinger, Inc. based on its filing or failing to file 2001 Form 40-F, 2002 Form 20-F, 2002 Form 6-K proxy statement, and 2003 Form 20-F; (VIII) Violation of Exchange Act Rule 13a-14, 17 C.F.R. § 240.13a.-14, by Black based on his signing certifications on Forms 10-Q and 10-K from March 31, 2003 through August 2003; and (IX) Violations of § 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rules 14a-3 and 14a-9, 17 C.F.R. §§ 240.14a-3, 240.14a-9 by Hollinger, Inc. as a control person under § 20(a) of the Exchange Act, 15 U.S.C. § 20(a). Each separately identified count contains little, if any, additional factual allegation, but does incorporate paragraphs 1 through 297 of the Amended Complaint.

Defendants move to dismiss all counts of the Amended Complaint. They contend that the SEC has not satisfied the requirements of Fed. R. Civ. P. 9(b) regarding its allegations of fraud, in particular, that it is improper to simply incorporate all the factual allegations of the Amended Complaint into each count and that scienter is not adequately alleged. Defendants also contend that the allegations of fiduciary violations contained in the Amended Complaint are insufficient to support

securities fraud and that control person liability is not adequately alleged.

Count I alleges securities fraud in violation of § 10(b) and Rule 10b-5. The SEC must allege that defendants (1) made a misstatement or omission (2) of material fact, (3) with scienter, and (4) in connection with the purchase or sale of a security. See In re Healthcare Compare Corp. Securities Litigation, 75 F.3d 276, 280 (7th Cir. 1996); SEC v. System Software Associates, Inc., 145 F. Supp. 2d 954, 957 (N.D. Ill. 2001). The pleading requirements of Fed. R. Civ. P. 9(b) apply to this count, meaning the circumstances of fraud must be pleaded with "particularity." Healthcare Compare, 75 F.3d at 280-81. The complaint must allege the time place, and content of the misleading statement, the method by which the misleading statement was communicated, and adequately identify the persons involved in the communication. Kennedy v. Venrock Associates, 348 F.3d 584, 593 (7th Cir. 2003), cert. denied, 541 U.S. 975 (2004) (quoting Sears v. Likens, 912 F.2d 889, 893 (7th Cir. 1990)); Lachmund v. ADM Investor Services, Inc., 191 F.3d 777, 784 (7th Cir. 1999). In other words, the complaint must contain "the who, what, when, where, and how: the first paragraph of any newspaper story." Katz v. Household International, Inc., 91 F.3d 1036, 1040 (7th Cir. 1996) (quoting DiLeo v. Ernst & Young, 901 F.2d 624, 629 (7th Cir.), cert. denied, 498 U.S. 941 (1990)). Fair notice is the most

basic consideration. Vicom, Inc. v. Harbridge Merchant Services, Inc., 20 F.3d 771, 777-78 (7th Cir. 1994); Wachovia Securities, LLC v. Neuhauser, 2004 WL 2526390 *4 (N.D. Ill. Nov. 5, 2004).

"Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). As to the scienter requirement for a § 10(b)/Rule 10b-5 claim, it must be pleaded with a sufficient level of factual support so that there is a basis for believing that plaintiff could prove scienter. Healthcare Compare, 75 F.3d at 281 (quoting DiLeo, 901 F.2d at 629); System Software, 145 F. Supp. 2d at 957. Pleading the who, what, when, where, and how with sufficient particularity to satisfy Rule 9(b) will generally be sufficient to support the scienter requirement. Healthcare Compare, 75 F.3d at 281; SEC v. Buntrock, 2004 WL 1179423 *5 (N.D. Ill. May 25, 2004).

Citing a footnote in a Seventh Circuit opinion, defendants contend it was improper to incorporate all the factual allegations of the Amended Complaint into each count. The cited case involves particularly identifying predicate acts for a RICO claim. The Seventh Circuit stated:

> We do not believe that in most cases it is proper for a plaintiff to attempt to satisfy the particularity requirement of 9(b) through an incorporation of the entire complaint into the RICO claim. In this instance, the 104 paragraphs in Slaney's complaint reference numerous mail and wire transactions, most of which were completely

> innocuous. Though we examined the alleged
> predicate acts contained in those paragraphs, we
> note that such a nebulous identification of
> predicate acts could be grounds enough to find
> that Slaney had failed to meet the particularity
> requirement of 9(b).

Slaney v. The International Amateur Athletic Federation, 244 F.3d 580, 599 n.10 (7th Cir.), cert. denied, 534 U.S. 828 (2001).

Unlike the complaint in Slaney, the SEC's Amended Complaint adequately identifies the conduct that is alleged to be wrongful. The Amended Complaint identifies all the persons and entities involved and then carefully describes various transactions that are claimed to be fraudulent. The mechanics of each transaction are set forth and the SEC identifies the particular fraudulent omissions or misrepresentations related to that transaction as well as who is responsible for the omission or misrepresentation. It is alleged that each transaction violated various securities statutes or regulations. Except where particularly noted in the individual count,[2] it is claimed that each transaction supports a claim under each count. There was no need to repeat 297 paragraphs under each count heading in order to include these allegations in each count. No count of

---

[2] Count VII is limited to the filing of the particular SEC forms recited in that count and Count VIII is limited to the certifications on the particular SEC forms recited in that count. Also, to the extent a particular defendant's involvement is not alleged regarding a particular count, he or it is not being claimed to be liable based on that transaction.

the Amended Complaint will be dismissed based on its incorporating factual allegations placed under different headings of the Amended Complaint.

Also, contrary to defendants' contention, the facts are not presented in a disorganized manner. As is set forth above, factual allegations are organized by transaction. The various transactions involving non-competition payments, the below-market-value transfers of Hollinger International assets to a defendant-owned entity, and the Hollinger International investment in a defendant-controlled entity are each described in particular sections of the Amended Complaint, including the related omissions or misrepresentations. The SEC will not be required to replead its Amended Complaint in a more organized or less vague manner.

Defendants bear the burden of establishing the legal insufficiency of the complaint. Yeksigian v. Nappi, 900 F.2d 101, 104-05 (7th Cir. 1990); Moriarty ex rel. Teamsters Local Union No. 727 Health & Welfare Fund v. K&M Plastics, Inc., 2004 WL 1170000 *1 (N.D. Ill. Feb. 6, 2004); Fedders Corp. v. Elite Classics, 279 F. Supp. 2d 965, 973 (S.D. Ill. 2003). To the extent a defendant believed that a particular element was deficient regarding that defendant and a particular transaction, it was incumbent on that defendant to make such an argument. See Shaaban v. Arthur Andersen & Co., 1992 WL 67851 *4 (N.D. Ill.

March 25, 1992). A defendant must support a motion to dismiss with adequate argument, identifying the particular deficiency in the complaint. A defendant cannot simply assert that a complaint in its entirety fails to allege a claim with adequate specificity. Cf. United States v. Jones, 224 F.3d 621, 626 (7th Cir. 2000) (contention that evidence was insufficient to support conviction needed to be supported by a developed argument).[3] Defendants' general contention that the Amended Complaint lacks particularity will not be considered. Only specifically identified deficiencies will be considered. The only issues raised are a failure to adequately allege scienter[4] and a failure to adequately allege control person liability.

During 2000 and 2001, Black and Radler received more than $19,000,000 each in non-competition payments. In 1999, Hollinger, Inc. received a non-competition payment of

---

[3]Contrary to defendant Black's contention, see Black Reply at 2, defendants bear the burden of pointing out deficiencies in the Amended Complaint. That is not inconsistent with plaintiff bearing the burden of pleading fraud with particularity. Plaintiff bears the pleading burden; defendants bear the burden of identifying where plaintiff has failed to meet its pleading burden and making adequate arguments in support of any such contention. To the extent defendants adequately raise deficiencies with the Amended Complaint, plaintiff must adequately respond with counterarguments.

[4]In his reply, Black also asserts for the first time that there are no allegations sufficiently connecting him to any omission or misrepresentation. Even assuming this argument is adequately raised, it is without merit.

approximately $15,200,000. From approximately 1999 through 2001, at least $85,000,000 of proceeds from sales of Hollinger International's assets were diverted to the three defendants and other third parties. This scheme involved at least 12 distinct transactions. In all the transactions involving non-competition payments, no purchaser ever requested a non-competition provision. In some of the transactions involving non-competition payments, persons receiving the payments (including defendants) did not sign any non-competition agreement. Also, Hollinger, Inc. received non-competition payments even though, throughout the pertinent time period, it was a mutual fund company with no operations. In light of the repeated nature of the scheme, the size of the payments, and that the payments were in return for illusory non-competition agreements, it is believable that all three defendants knew they were receiving payments for which they had provided no services or anything of significant value. It has been adequately alleged that defendants acted with scienter when omitting to disclose the non-competition payments and when making other misstatements or omissions. No claim will be dismissed for failing to allege fraud with the particularity required by Rule 9(b).

Defendants contend Counts I and II are deficient because they allege self-dealing fiduciary duty violations that do not qualify as securities fraud violations. The SEC, however, has

not simply alleged that defendants engaged in self-dealing. It also alleges that defendants failed to disclose the self-dealing transactions in SEC filings and before the Board and Audit Committee of Hollinger International.

Following the Supreme Court's decision in <u>Santa Fe Industries, Inc. v. Green</u>, 430 U.S. 462 (1977), the law has been clear that the federal securities laws are not violated by conduct that only constitutes a breach of fiduciary duty under state law. See <u>Panter v. Marshall Field & Co.</u>, 646 F.2d 271, 288 (7th Cir.), <u>cert. denied</u>, 454 U.S. 1092 (1981). Case law following <u>Santa Fe Industries</u> also establishes that a state fiduciary duty violation cannot be bootstrapped into being a federal securities law violation "by alleging that the disclosure philosophy of [§ 10(b) and Rule 10b-5] obligates defendants to reveal either the culpability of their activities, or their impure motives for entering the allegedly improper transactions." <u>Panter</u>, 646 F.2d at 288. However, there is a securities law violation if the conduct involves the manipulation or deception prohibited by Rule 10b-5. <u>Id.</u> "The critical issue in determining whether conduct meets the requirement of deception, the Court announced in <u>Santa Fe Industries</u>, is whether the conduct complained of includes the omission or misrepresentation of a material fact, or whether it merely states a claim for a breach of a state law duty." <u>Id.</u> In <u>Panter</u>, upon which

defendants heavily rely, the Seventh Circuit reviewed the district court's grant of a directed verdict in favor of defendants. The plaintiffs in that case did attempt to show that the claimed fiduciary breach was accompanied by deception. The Seventh Circuit upheld the directed verdict on those claims not because there could be no securities fraud claim related to a state law breach of fiduciary duty, but because no related deception was adequately shown. As to each claimed deception, the Seventh Circuit generally held that either the essential material facts were sufficiently disclosed or the alleged omission or misstatement was not material. See id. at 289-93.

As to the American Trucker, CNHI I, and Horizon transactions, it is alleged that Black and Radler failed to disclose to Hollinger International's independent directors and Audit Committee that the non-competition payments were part of the transactions and that all three defendants failed to include this information in SEC filings. As to the CNHI II, Forum, and Paxton transactions, it is alleged that Hollinger, Inc. failed to disclose non-competition payments in response to Hollinger International proxy questionnaires. The same is alleged regarding Black's and Radler's CNHI II non-competition payments. As to the CNHI II, Forum, and Paxton transactions, as well as the American Publishing payments, it is also alleged that all three defendants made misrepresentations and omitted facts about

non-competition payments in various SEC filings. Additionally, the non-competition payments as to these three transactions and the American Publishing payments were not disclosed to the full Board of Hollinger International or its Audit Committee. Also, Black is charged with misstatements and omissions about these same transactions at a shareholders meeting and Radler, who was present, did not correct the statements. Defendants do not dispute that accurate information should have been included in the SEC filings, proxy questionnaires, and in response to shareholder questions. There is also no argument that this information, which would have disclosed that assets were being drained from Hollinger International, would have been material to a purchase of Hollinger International stock. The SEC has alleged material omissions and misrepresentations related to the non-competition transactions, not merely self-dealing breaches of fiduciary duty.

The CanWest transaction was somewhat different from the other transactions involving non-competition payments because the Hollinger International Board and Audit Committee were informed that this transaction involved non-competition payments. However, misrepresentations were made regarding CanWest requesting the non-competition payments, a management fee being paid to a Black and Radler owned and controlled company, and the bases for the allocations. Also, Black and Radler permitted SEC

Forms 10-Q and 10-K to be issued that contained misstatements about the CanWest transactions. As with the other transactions, material omissions and misrepresentations related to the CanWest transaction are alleged, not merely self-dealing breaches of fiduciary duty.

In connection with the transactions in which Hollinger International assets were transferred to Black and Radler owned Horizon Publications, the Amended Complaint sets forth misrepresentations and omissions contained in Hollinger International Forms 10-K. The allegedly improper venture capital investment involves misstatements contained in Forms 10-Q. The SEC has alleged more than just self-dealing breaches of fiduciary duty.

As to each allegedly improper transaction, the SEC has alleged more than just a state law breach of fiduciary duty. It has alleged improper deceptions related to each transaction.

Since the SEC has alleged fraud with adequate specificity, it is unnecessary to consider whether Rule 9(b) applies to other counts as well. Even if it does, the SEC has satisfied the particularity requirement as regards the underlying conduct.

Still to be considered is whether control person liability is adequately alleged. Three counts allege control person liability. In Count III, the SEC alleges all three

defendants have control person liability for Hollinger International's alleged misstatements in Forms 10-Q and 10-K and annual proxy statements in violation of § 13(a) and related regulations. In Count IV, it is alleged that all three defendants have control person liability for Hollinger International's failure to keep adequate books, records, and accounts in violation of § 13(b)(2). In Count IX, the SEC alleges Hollinger, Inc. has control person liability for Hollinger International having false and misleading statements in solicitations for proxies, consents, and authorizations and in notices of meetings in violation of § 14(a) and related regulations. Hollinger, Inc. moves to dismiss all three counts as against it. Black and Radler move to dismiss Count IV; they do not contend that Count III fails to adequately allege control person liability as to them.

In support of control person liability, the SEC must allege (1) a primary violation of the securities laws; (2) that the defendant exercised general control over the operations of Hollinger International; and (3) that the defendant "possessed the power or ability to control the specific transaction or activity upon which the primary violation was predicated, whether or not that power was exercised." Harrison v. Dean Witter Reynolds, Inc., 79 F.3d 609, 614 (7th Cir.), cert. denied, 519 U.S. 825 (1996); Buntrock, 2004 WL 1179423 at *9; SEC v. Kahn,

2002 WL 1163723 *7 (N.D. Ill. May 31, 2002). As previously discussed, the SEC has adequately alleged primary violations of the securities laws. The present issue is whether it has adequately alleged the second two elements.

The SEC alleges that, since at least 1998, Hollinger, Inc. has been the controlling shareholder of Hollinger International. As of the filing of the Amended Complaint, Hollinger, Inc. owned 18.2% of Hollinger International's equity, but 68% of its voting power. Ravelston Corporation Limited owns 78% of Hollinger, Inc. Black owns a majority interest in Ravelston and Radler owns 14.2% of Ravelston. During the pertinent time period, Black was the Chairman and CEO of Ravelston, Hollinger, Inc., and Hollinger International, and a member of Hollinger International's Executive Committee. Black signed Hollinger International's Forms 10-K and, beginning in 2002, also certified its annual and quarterly reports as required by the Sarbanes-Oxley Act of 2002. During the pertinent time period, Radler was Deputy Chairman, President, COO, a Director, and an Executive Committee member of Hollinger International and also signed its Forms 10-K. Radler was also the Chairman and COO of Hollinger, Inc.

Clearly, Black and Radler are alleged to have control over Hollinger International's operations. They are also alleged to have exercised control over recordkeeping and accounting

control matters. As to a number of transactions, it is alleged that Black and Radler controlled information that was provided to the Audit Committee. They also controlled information provided in proxy responses and designated how proceeds from various transactions were to be allocated and characterized. Control person liability as to Count IV is adequately alleged as to Black and Radler. Cf. In re Spiegel, Inc. Securities Litigation, 2004 WL 1535844 *27 (N.D. Ill. July 8, 2004).

As to Hollinger, Inc., it is the controlling shareholder of Hollinger International. Clearly, it had the ability to control Hollinger International. That, though, would not be sufficient for control person liability if Hollinger, Inc. did not actually exercise its ability to control Hollinger International. Aldridge v. A.T. Cross Corp., 284 F.3d 72, 85 (1st Cir. 2002). Contrary to Hollinger, Inc.'s contention, the Amended Complaint does allege that Hollinger, Inc. actually exercised control over Hollinger International. In addition to alleging that Hollinger, Inc. was a controlling shareholder, it is alleged that Black, Radler, and other officers or directors of Hollinger, Inc. served as officers or directors of Hollinger International. Also, it is alleged:

> 44. Black, through his ownership and control of Ravelston, controls Hollinger, Inc. and through his ownership and control of Hollinger, Inc. controlled Hollinger International through at least 2003.

> 45. From at least 1998 through at least 2003, Black held himself out to the world as being able to control Ravelston, Hollinger, Inc. and Hollinger International.

Am. Compl. ¶¶ 44-45. The Amended Complaint details how Black and Radler, both individually and on behalf of Hollinger, Inc., exercised control over Hollinger International. The Amended Complaint adequately alleges that Hollinger, Inc. exercised control over Hollinger International.

IT IS THEREFORE ORDERED that defendants' motions to dismiss [22, 23, 27] are denied. Within two weeks, defendants shall answer the Amended Complaint.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: JUNE 17, 2005